**John J. ROSE, Plaintiff,**

**v.**

**IRECO INCORPORATED, Defendant.**

No. 92–CV–626.

United States District Court,
N.D. New York.

Dec. 30, 1994.

Michael T. Wallender, Albany, NY, for plaintiff.

Roemer and Featherstonhaugh, P.C., Michael P. Mullen, Claudia A. Ryan, Albany, NY, for defendant.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

Presently before the court in this age discrimination action are defendant's motions pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure for judgment as a matter of law or a new trial. Trial was held from October 13 through October 19, 1993, after which the jury found in favor of plaintiff. Plaintiff moves for an award of front pay and post-judgment interest based on the jury's verdict in his favor, and for attorney's fees pursuant to 29 U.S.C. § 626(b). The court heard oral argument on all motions on November 29, 1993.

## BACKGROUND

This action was commenced by plaintiff John J. Rose pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, to recover money damages for injuries allegedly sustained because of the termination of his employment by defendant Ireco Incorporated ("Ireco") on August 28, 1990. Because the jury found in favor of plaintiff on his wrongful termination claim, awarding him $179,946.00 in back pay, it did not reach his claim for failure to rehire.

## DISCUSSION

### A. Defendant's Motion for Judgment as a Matter of Law

At the close of plaintiff's case-in-chief, and again at the close of proof, defendant moved for judgment as a matter of law. The court denied defendant's first motion, and reserved decision on the second. Defendant now renews the motion for judgment as a matter of law.

■ A court may grant a motion for judgment as a matter of law when, after a party has been fully heard with respect to an issue, "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). In this circuit, such a motion may be granted only where there is "'such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise and conjecture,' or if the evidence is 'so overwhelming that reasonable and fair minded persons could only have reached the opposite result.'" *Lambert v. Genesee Hospital,* 10 F.3d 46, 56 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994) (quoting *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir.1992), which quotes in turn *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir. 1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989)). "In ruling on such a motion, the court must 'consider the evidence in the light most favorable to the [nonmoving party] and . . . give that party

the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence.'" *Concerned Residents for Env't v. Southview Farm,* 34 F.3d 114, 117 (2d Cir.1994) (quoting *Smith v. Lightning Bolt Prod., Inc.,* 861 F.2d 363, 367 (2d Cir. 1988)).

The ADEA provides that it is "unlawful for an employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The legal standard to be applied to suits under the ADEA is the well known three-step analysis for Title VII cases established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), clarified in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), and further refined in *St. Mary's Honor Ctr. v. Hicks,* — U.S. —, — – —, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). The *McDonnell Douglas* analysis sets forth a burden shifting scheme in which plaintiff ultimately bears the burden of proving discriminatory intent on the part of defendant.

The first phase of the analysis requires plaintiff to prove by a preponderance of the evidence a "prima facie" case of discriminatory discharge. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. To establish a prima facie case of discriminatory discharge, "a plaintiff must show that (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1155 (2d Cir.1993) (citations omitted).

If plaintiff succeeds in proving a prima facie case, a presumption is created that the employer unlawfully discriminated against the employee and the court must proceed to the second phase of the analysis, in which the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions. *Hollander v.*

*Am. Cyanamid Co.,* 895 F.2d 80, 83 (2d Cir.1990). Defendant bears only the burden of production and need not persuade the court that it was actually motivated by the proffered reason, as the burden of persuasion remains with the plaintiff at all times. *Cosgrove v. Sears Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993); *Dicola v. Swissre Holding, N. Am. Inc.,* 996 F.2d 30, 32 (2d Cir. 1993). To rebut the presumption created by plaintiff's prima facie case, it is sufficient that defendant produces admissible evidence that is "legally sufficient to justify a judgment" in its favor. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

If the defendant carries this burden of production and rebuts the presumption raised by plaintiff's prima facie case, the court reaches the third and final phase of the analysis. At this stage, the *McDonnell Douglas* framework becomes irrelevant. *Cosgrove,* 9 F.3d at 1039 (citing *Hicks,* — U.S. at —, —, 113 S.Ct. at 2747, 2749). Plaintiff must demonstrate that the proffered reason was not the true reason for the discharge, but instead was a pretext for intentional discrimination. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95. Plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

In the instant case, defendant advances three arguments in support of its claim that plaintiff failed to prove his prima facie case of discrimination. First, defendant argues that plaintiff failed to demonstrate that his position was filled by anyone else. Furthermore, defendant asserts, the evidence was insufficient to create an inference of discrimination because only two of the four employees terminated by Ireco on September 4, 1990 were within the protected class. Lastly, plaintiff was not qualified for any other available position at the time of his discharge.

Defendant's arguments are misguided. First, it is well established in the Second Circuit that a plaintiff suing under the

ADEA is "not required to show that he was replaced by a younger, newly-hired, employee." *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1993); *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 104–05 (2d Cir.1988). More importantly, plaintiff entered sufficient proof at trial to raise an inference of age discrimination. In his case-in-chief, plaintiff demonstrated that he was 56 years old when discharged from employment with Ireco, after approximately thirty years of service, and that his termination was completely unexpected in light of his consistently satisfactory performance evaluations and merit pay increases. Plaintiff's Exhibits 5–8, 10–11. Production Manager David Dittman testified that in July, 1990, he discovered that Richard Rice had been promoted to Manager of the powder services area in which plaintiff was then employed. Rice was 27 years old. Dittman recalled that he expressed concern to Plant Manager David Nowlen, Dittman's supervisor, that Rice was too inexperienced for the position, and indicated that plaintiff would be far more suitable for the job. According to Dittman, Nowlen declined to change his decision to promote Rice, explaining that he wanted "young blood" in the powder area. Plaintiff was discharged three weeks later.

The court concludes that plaintiff established a prima facie case of discriminatory discharge. Plaintiff was within the protected age group, was qualified for, and terminated from that position. In addition, the evidence sufficiently establishes a prima facie case supporting an inference of discrimination. Viewing the evidence most favorably to plaintiff, the court holds that plaintiff has shown, by a preponderance of the evidence, that a fair minded jury could rationally conclude that plaintiff established a prima facie case of age discrimination. Thus, the court turns to the second phase of its analysis, in which defendant bears the burden of production to show that plaintiff was terminated for a legitimate, nondiscriminatory reason.

 In support of the claim that plaintiff was terminated for a legitimate, nondiscriminatory reason, defendant produced the testimony of Gary Lindsay and Walt Elston, President and Vice President of Ire-

co, respectively. Both witnesses testified that plaintiff was discharged as part of a broad reorganization and downsizing of management plan, which was the result of a legitimate business decision to consolidate supervisor positions. The court concludes that defendant met its burden of production in proffering a legitimate, nondiscriminatory reason for plaintiff's termination from employment. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. When a defendant succeeds in this regard, the presumption of unlawful discrimination disappears and the court must turn to the final phase of the *McDonnell Douglas* analysis, under which plaintiff must go forward to prove the ultimate issue of his ADEA claim. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1038 (2d Cir.1993) (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093). At this stage of the analysis, plaintiff must prove by a preponderance of the evidence that defendant discriminated against him because of his age. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2753. "This may be demonstrated by reliance on the evidence that established [his] prima facie case, without any additional evidence being required, *see Hicks*, —— U.S. at ——, 113 S.Ct. at 2749, or by presentation of additional evidence to show that [defendant's] reasons for [his] discharge were false." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1226 (2d Cir.1994) (citing *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 142 (2d Cir.1993).

 After a careful review of the evidence presented at trial, the court concludes that the jury had before it sufficient evidence to find that the reason for plaintiff's dismissal was because of his age and that defendant's proffered reasons for the termination of plaintiff were merely a pretext. First, the court incorporates into this part of the analysis the evidence already relied upon by the court in establishing plaintiff's prima facie case. In addition, the court notes that plaintiff's satisfactory performance record was bolstered by Keith Jones, a long-standing employee in the powder services area of Ireco's Port Ewen Plant, who testified that plaintiff was the best supervisor. Further, Jennie Carpino, Human Resource Manager

of the Port Ewen Plant, testified that based on her first-hand knowledge of activities at the plant, and on her continual review of Ireco's employment records, she could think of no reason other than age for plaintiff's dismissal. This testimony enhances the significance of the statement by Plant Manager David Nowlen that defendant sought "young blood" in the powder services area of the Port Ewen Plant. Although the quantum of evidence adduced by plaintiff was not overwhelming, the evidence presented at trial was sufficient to infer that it was more likely than not that plaintiff was terminated from his job because of his age. Therefore, defendant's motion pursuant to Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law is denied.

### B. Defendant's Motion for New Trial

Defendant alternatively moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Generally a new trial is appropriate only if the court "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice," *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 370 (2d Cir. 1988), and "a judgment as a matter of law would not be appropriate." *Paper Corp. of the United States v. Schoeller Technical Papers, Inc.,* 807 F.Supp. 337, 347 (S.D.N.Y. 1992). However, "[u]nlike a judgment [as a matter of law], a new trial may be granted even if there is substantial evidence to support the jury's verdict." *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir. 1992). In considering such a motion, the court is not constrained to view the evidence in the light most favorable to the non-movant. *Paper Corp. of the United States,* 807 F.Supp. at 347. Rather, the court conducts its own appraisal of the evidence. *Paper Corp. of the United States,* 807 F.Supp. at 347; *Grunenthal v. Long Island R.R. Co.,* 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968).

### 1. Weight of the Evidence

Defendant puts forth two arguments in support of his alternative motion. First, defendant asserts in a conclusory fashion that the jury's verdict is clearly erroneous in that it is against the weight of the evidence. Defendant fails, however, to specify how the verdict is erroneous, and what evidence it believes the jury weighed incorrectly. Because the record contains ample evidence to support the reasonableness of the jury's verdict, the court can not conclude that the jury reached a seriously erroneous result or a miscarriage of justice.

### 2. Charge to the Jury

Defendant's second argument in support of its motion for a new trial is based on the court's charge to the jury. Defendant argues that certain phrases used by the court in the charge were ambiguous, and that the court thus "failed to present a charge properly conveying the necessary showing of pretext of discrimination which a plaintiff must prove to recover." [1] Defendant's Memorandum of Law, Doc. 42, at 19. Specifically, defendant contends that the court did not convey that plaintiff must show "*both* that the reason was false *and* that discrimination was the real reason" why plaintiff was discharged. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2750.

Further, defendant argues that the court compounded the damage caused by the erroneous charge by improperly answering a question asked by the jury during its deliberations. In response to the question of whether age had to be the only reason for plaintiff's termination, the court responded in the negative, explaining that age need only be a "determinative factor." Defendant argues that this response misled the jury into thinking that even if defendant had a legitimate business reason for terminating plaintiff, it could be held liable. At the very least, defendant argues, the court should have re-

---

1. In particular, defendant highlights phrases such as "[defendant's burden to produce] evidence *tending to show* a nondiscriminatory reason" and "[plaintiff's burden to demonstrate that the proffered reasons] are but a mere pretext or cover-up for what is in tru[th] the discriminatory purpose, or that a discriminatory reason *more likely* motivated the employer." Charge Transcript, Doc. 64, at 27.

read the entire charge to clarify the proper legal standard to apply.[2]

■■■ The court is unpersuaded by defendant's arguments. As noted in *Hicks,* "the defendant must clearly set forth ... reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was *not* the cause of the employment action." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747 (emphasis added). Moreover, plaintiff "is not required to show that age was the *only* determinative factor in the discharge, only that it was *a* determinative factor; one that made a difference in the employer's decision to terminate the employee." *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 259 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992) (emphasis added). As to defendant's second argument, the charge to the jury accurately conveyed the relative burdens of production and proof of the parties. The charge unambiguously conveyed that plaintiff must prove, by a preponderance of the evidence, that discrimination was a motivating and determinative factor in plaintiff's dismissal from employment. The court's response to the jury's question merely emphasized that discrimination need not be the only factor behind defendant's action, so long as it was a determinative factor. This response was legally accurate and was properly gauged to answer the jury's question with specificity. No further instruction by the court was necessary to answer the question posed by the jury.

The court concludes that there was no error in the jury charge or the court's response to the jury question. Also, the court holds that the verdict was not against the weight of the evidence. Thus, defendant's motion for a new trial pursuant to Rule 59 is denied.

### C. *Plaintiff's Motion for Front Pay and Post–Judgement Interest*

Plaintiff seeks $174,150.00 under the equitable remedy of front pay because reinstatement is impossible, and post-judgment interest on the awards for front and back pay. His motion for front pay is based, in part, on the testimony of Anthony Riccardi, plaintiff's expert economist. Riccardi estimated plaintiff's lost future income and benefits through age 62 to equal at least $174,150.00, the amount with unemployment compensation offset, and more accurately $179,280.00, the amount with unemployment compensation not offset.

Defendant opposes plaintiff's motion for front pay on theories of failure to mitigate and erroneous calculation. Defendant argues that plaintiff's failure to mitigate is evident, in that he never listed himself with an employment agency, sent out only approximately 100 applications since his termination at the end of August 1990, responded to fewer than forty advertisements between September and December 1990, described himself as semi-retired when accepting a part-time position in January 1991 as a school bus driver, and sent out no job applications at all during several periods in 1991, 1992 and 1993.

Defendant further argues that in the event plaintiff is allowed to recover front pay, such damages should be calculated based on retirement at age 60, when most Ireco employees retire and when their benefit packages are most valuable, rather than age 62, as suggested by plaintiff. Moreover, defendant points to several flaws in the calculations of plaintiff's expert. First, plaintiff's back pay award included $28,185.00 for lost pension up to age 60, which must be deducted from any front pay award to prevent double counting. Second, plaintiff's expert speculated as to future insurance benefits, rather than basing this projection on the cost of premiums paid by defendant.

■■■ In cases where the employment relationship has been irreparably damaged

---

2. For example, the court charged the jury that "your verdict will be for the defendant if you find that plaintiff has failed to prove that his age was a determinative factor in defendant's decision or conduct; or if you find that the defendant has proved that there were independent reasons for the discharge, and plaintiff would have been discharged regardless of age." Charge Transcript, Doc. 64, at 20. According to defendant, the court should have included this portion of the charge in its answer to the jury's question.

by the animosity flowing from litigation, the decision whether to award front pay in lieu of reinstatement is an equitable one entrusted to the trial court. *Dominic v. Consol. Edison Co. of New York, Inc.*, 822 F.2d 1249, 1257 (2d Cir.1987). Such an award may not be unduly speculative, *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1984), and must be reduced to the extent that damages could have been mitigated. *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir.1992). In determining whether to award front pay, the court should consider whether such an award " 'will aid in ending illegal discrimination and rectifying the harm it causes.' " *Dunlap–McCuller*, 980 F.2d at 159 (quoting *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159–60 (6th Cir.1985)).

■ The court holds that front pay is appropriate in this instance. The parties at bar agree that reinstatement is impracticable. Moreover, defendant has not succeeded in demonstrating that plaintiff failed to exercise reasonable diligence in seeking to mitigate damages. *See Reilly v. Cisneros*, 835 F.Supp. 96, 99 (W.D.N.Y.1993) (holding that burden is upon defendant to show plaintiff's actions were "so deficient as to constitute an unreasonable failure to seek employment." (citations omitted)). Nonetheless, the court will not base such an award on the calculations of Anthony Riccardi, plaintiff's expert, which are partially duplicative and unduly speculative. Instead, the court awards plaintiff $29,166.00 in front pay, as suggested by defendant. This figure is a reasonable estimation of plaintiff's future loss through age 60, without duplicative recovery for pension benefits, speculative insurance benefits, speculative wages past age 60, *see Dominic*, 822 F.2d at 1258, or damages potentially mitigated through plaintiff's future employment, including his current employment as a school bus driver for Laidlaw, Inc. *See* Mullen Affidavit in Opposition to Plaintiff's Motion for Front Pay, Doc. 55 at ¶¶ 11–18; Murphy Testimony, Doc. 64, at 368–96, and; Rose Affidavit in Support of Motion for Front Pay and Postjudgment Interest, Doc. 44 at ¶ 12.

With regard to the period upon which to award front pay, while plaintiff may have intended to retire from Ireco at the age of 62, *see* Rose Affidavit in Support of Motion for Front Pay and Postjudgment Interest, Doc. 44 at ¶ 2, the court concludes that plaintiff's testimony of his intentions is unduly speculative. Instead, defendant's suggestion that age 60 should be used to calculate an award of front pay is both reasonable and supported by testimony that most Ireco employees retire at that age.

■ Defendant does not address plaintiff's request for post-judgment interest. Such interest is mandated by 28 U.S.C. § 1961, and is designed to compensate plaintiff for any delay suffered from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment. *Andrulonis v. United States*, 26 F.3d 1224, 1230 (2d Cir.1994). Therefore, plaintiff's motion for post-judgment interest is granted, calculated at the prevailing Treasury Bill rate as provided in 28 U.S.C. § 1961(a).

### D. Plaintiff's Motion for Costs and Fees

■ Plaintiff moves for attorney's fees pursuant to the fee shifting provision of 29 U.S.C. § 626(b), which incorporates by reference § 216(b) of the Fair Labor Standards Act. Using the lodestar method of calculation,[3] plaintiff requests compensation for 563.55 hours of attorney work at $175.00 per hour and 42.5 hours of paralegal work at $60.00 per hour, plus expert witness fees of $1,200.00 and other costs and disbursements of $2,222.90, for a total of $104,594.15. Plaintiff further requests a fee enhancement using a multiplier in the court's discretion, based on the difficulty and "undesirability" of the case from the standpoint of likelihood of success, and the delay in payment.

■ The court finds that plaintiff's calculations of costs and fees are both reasonable and sound. However, expert witness fees are not compensable under the fee-shifting provisions of the Fair Labor Standards Act.

---

**3.** The lodestar amount is calculated by determining the "number of hours reasonably expended multiplied by a reasonable hourly rate." *Domin-*

*ic v. Consol. Edison Co. of New York, Inc.*, 822 F.2d 1249, 1259 (2d Cir.1987).

*Pierce v. F.R. Tripler & Co., Inc.,* 770 F.Supp. 118, 122 (S.D.N.Y.1991). The court concludes that plaintiff is entitled to recover only $103,394.15 in costs and attorney's fees, which represents the difference between the $104,594.15 requested by plaintiff minus $1,200 for expert fees. Plaintiff's request for enhancement of the fee award is denied.

## CONCLUSION

In sum, defendant's alternative motions for judgment as a matter or law and a new trial are denied. Plaintiff's motion for front pay is granted to the extent that plaintiff is awarded $29,166.00. Plaintiff's motion for post-judgment interest is granted, and shall be calculated as specified in 28 U.S.C. § 1961. Plaintiff's motions for attorney's fees and costs is granted to the extent that plaintiff is awarded $103,394.15.

It is So Ordered.