19-506-cv
*Mohammadreza Daeisadeghi v. Equinox Great Neck, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand nineteen.

PRESENT:    ROBERT D. SACK,
            DENNY CHIN,
            JOSEPH F. BIANCO,
                    *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MOHAMMADREZA DAEISADEGHI,
                    *Plaintiff-Appellant*,

                    v.                                    19-506-cv

EQUINOX GREAT NECK, INC.,
                    *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:    THOMAS RICOTTA, Ricotta & Marks, P.C.,
                            Long Island City, New York.

FOR DEFENDANT-APPELLEE:     PATRICK McPARTLAND (Jared E. Blumetti, *on the brief*), LaRocca Hornik Rosen & Greenberg LLP, New York, New York.

FOR AMICI CURIAE:     BARBARA L. SLOAN (James L. Lee, Jennifer S. Goldstein, Sydney A.R. Foster, *on the brief*), Equal Employment Opportunity Commission, Washington, D.C.

Appeal from the United States District Court for the Eastern District of New York (Spatt, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Mohammadreza Daeisadeghi appeals the district court's January 28, 2019 judgment dismissing his national origin discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against defendant-appellee Equinox Great Neck, Inc. ("Equinox") for hostile work environment and wrongful termination.  By memorandum and order entered January 25, 2019, the district court granted Equinox's motion for summary judgment.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review *de novo* the district court's grant of summary judgment, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [his] favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013).  A movant is entitled to summary judgment if

2

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

On appeal, Daeisadeghi argues that, because of his national origin, he was (1) wrongfully terminated, and (2) subjected to a hostile work environment, in violation of Title VII. The district court held that Daeisadeghi failed to demonstrate a genuine issue of fact with respect to both claims. We agree.

### A.   Wrongful Termination

Daeisadeghi failed to present evidence from which a jury could infer discrimination. On this record, a reasonable jury could only conclude that Equinox terminated Daeisadeghi for violating company policy. In an October 2014 email to all personal training managers, Equinox reported that employees were inappropriately using an employee discount to purchase training sessions for non-employee Equinox members. The email reiterated what was stated in the Equinox employee handbook -- that employees who violated the policy were subject to "termination of employment." App'x at 807. Daeisadeghi acknowledged that he received, read, and understood the email. Yet, as the record unequivocally demonstrates, even after receipt of the email Daeisadeghi knowingly permitted his personal attorney to purchase training sessions using his employee discount. Indeed, at deposition, Daeisadeghi admitted doing so, and that the total discount from the training sessions exceeded $10,000. Moreover, the

3

attorney testified that Daeisadeghi gave her discounted sessions in exchange for legal work she performed on his behalf. *See* App'x at 591 (Daeisadeghi's attorney confirming that Daeisadeghi purchased discounted personal training sessions for her "in exchange for the legal work . . . performed on his behalf"); *see also* App'x at 810 (Daeisadeghi's email noting that the sessions were purchased as "a favor" for a "custody" issue involving his son). On this record, a reasonable jury could only conclude that Daeisadeghi was terminated for violating company policy and not for a discriminatory reason.

### B. Hostile Work Environment

Daeisadeghi next argues that he was subjected to a hostile work environment at Equinox because of the "daily harassment" he experienced regarding his national origin. Appellant's Br. at 17. To establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of New*

4

*York*, 795 F.3d 297, 321 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, (1993)).  In conducting this analysis, this Court considers: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009).

The district court granted summary judgment in favor of Equinox after concluding that the harassment Daeisadeghi experienced was not sufficiently frequent or severe to constitute a hostile environment.[1]  While Daeisadeghi does point to evidence that he was subjected to frequent harassment in the form of jokes about his accent and national origin, the harassment, while inappropriate and offensive, does not rise to the level of creating a hostile work environment in the circumstances here. Daeisadeghi failed to present evidence that the conduct was physically threatening or humiliating, or that the conduct interfered with his work (he testified that he was a "high performance employee," App'x at 280), or that he suffered any psychological

---

[1]     The district court also found that Daeisadeghi "participated in similar antics" when he told an employee he would "kick [his] ass" or "kick [him] in the head."  S. App'x at 22-23.  Daeisadeghi's participation in "similar antics" at Equinox, however, does not undermine his discrimination claim at the summary judgment stage.  As this Court has stated before, "two wrongs do not make a right." *United States v. Hassan*, 578 F.3d 108, 121 n.5 (2d Cir. 2008).  Daeisadeghi's alleged threatening statements do not cancel or nullify any discrimination he might have experienced from his supervisors.  Nonetheless, for the reasons discussed, Daeisadeghi's hostile work environment claim still fails.

harm as a result. Indeed, he admitted that he suffered no emotional distress from any of the harassment he experienced while working at Equinox. *See* App'x at 392. While the absence of emotional harm is not dispositive, it is "relevant [to] whether the plaintiff actually found the environment abusive." *Harris*, 510 U.S. at 23.

In the end, Daeisadeghi alleges only "mere offensive utterance[s]." *Aulicino*, 580 F.3d at 82. As we have observed, however, "Title VII does not set forth 'a general civility code for the American workplace,'" *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012), and "[s]imple teasing [or] offhand comments . . . will not amount to discriminatory changes in the terms and conditions of employment," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). While there is some evidence that Daeisadeghi was subject to teasing and requested a transfer, in part, due to the teasing, on this record no reasonable jury could conclude that the workplace was "permeated with discriminatory intimidation, ridicule, and insult," *Harris*, 510 U.S. at 21, or that the environment "alter[ed] the conditions" of Daeisadeghi's employment, *id.*; *see Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004); *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994) ("*Some* evidence is not sufficient to withstand a properly supported motion for summary judgment; a plaintiff opposing such a motion must produce sufficient evidence to support a rational finding" in his favor); *cf. Rivera*, 743 F.3d at 23 (vacating summary judgment after plaintiff offered evidence of ethnic slurs, bullying, and

6

physical harassment); *Raniola v. Bratton*, 243 F.3d 610, 618-23 (2d Cir. 2001) (vacating summary judgment after plaintiff offered evidence of specific derogatory remarks, sexually demeaning posters, and specific incidents of workplace sabotage).

\* \* \*

We have considered Daeisadeghi's remaining arguments and conclude they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk